THE STATE, DEFENDANT IN ERROR. v. LOUIS UNGER
ET AL., PLAINTIFFS IN ERROR.

Argued March 8, 1920—Decided June 14, 1920.

An accused person defending himself against a criminal charge suffers the manifest wrong and injury described in the statute, when a detective, attached to the office of the prosecutor of the pleas, without authority of law, assumes, in part at least, the care and custody of a jury empaneled to determine his guilt or innocence on an indictment prosecuted by the prosecutor of the pleas, and in pursuance of that assumption mingles with the jury, converses and takes his meals with them as freely as a properly appointed officer sworn to perform that duty.

On appeal from the Supreme Court, whose opinion is reported in 93 *N. J. L.* 50

For the defendant in error, *Pierre P. Garven.*

For the plaintiffs in error, *Alexander Simpson* and *Robert H. McCarter.*

The opinion of the court was delivered by

BERGEN, J. The defendants were convicted on an indictment charging them with a violation of their duty as members of the board of registry and election in one of the districts of Jersey City, and brought the record of the judgment based on the verdict of the jury to the Supreme Court for review, assigning errors, and also presenting causes for reversal as permitted by sections 136 and 137 of the Criminal Procedure act. The Supreme Court affirmed the conviction, which is the judicial action the defendants challenge in this court.

The first matter argued by the appellants is, that the trial court erred in charging the jury concerning the duty of the members of the election board to compare the signature of the voters written in the poll book with those in the registry book before accepting the votes. The error urged is that the statute

only requires that "one of the members of the board of registry shall compare the signature in the poll book with that in the registry book, and to certify that fact by writing his intitials after the signature." This objection is based upon an excerpt from the charge, which is not a fair analysis of it. The court instructed the jury that they should take up the guilt or innocence of the defendants separately and that the act of one was not to affect the other or others, "As to each one before finding a verdict of guilty you should be satisfied by the weight of the evidence, beyond a reasonable doubt, that the defendant under consideration is guilty of at least one of the counts of the indictment. If you do not so find, you should find, as to that defendant, not guilty." The court then took up the requests to charge made by the defendants and read them to the jury, one of them being that all of the election officers are not charged by law with the duty of comparing the signature of the voter on the registry book with that on the poll book, but only one member of the board is charged with that duty, and if that one is satisfied with the signature and shall have manifested it, there is no duty cast by the law upon the other members of the board to make the comparison. After reading this request the court said: "But in that connection I also charge you that while the law says that one of the members shall compare the signature book, as I have said, the comparison and statements shall be in full view of the watchers, challengers or agents, and the right to challenge shall exist until the ballot shall have been deposited in the ballot box." It is urged that although the court read this request to the jury it did not, in express terms, inform them that it so charged. We think that when the trial court used the expression after reading the request, "But in that connection I also charge you," the jury could not have understood that it was not charging the request. The jury was then instructed that it was to consider the evidence as to each ballot sought to be proved as having been illegally cast "as to the conduct of each defendant, whether as to each said ballot, such conduct was legal or illegal," and followed this by saying that the jury was to see whether one of the members of the board compared the signa-

tures. The particular matter complained of is a statement by the judge that the purpose of having the signature compared was to insure, if possible, an honest election, and "if the election officers had examined the signatures did the signatures compare in their opinion." This reference to the acts of the defendants could not mislead the jury if taken in connection with all the court had said. We are of opinion that the statute makes it the duty of the board to see that some one member compares the signatures before accepting the ballot, and that if they do that and are innocently mislead by the one who is to make the comparisons, they would not be guilty, but we are also of opinion that the members of the board cannot stand by with knowledge that no comparisons are being made and proceed with the election without being guilty of a violation of the act. They are not all bound to compare, but all are bound to see that some one of them is honestly performing that part of the election law.

It is further argued by the defendants that it was to their manifest wrong and injury for the trial court to deny a motion to direct a mistrial. The Supreme Court affirmed the action of the trial court upon the ground that the granting of such motion is a matter of discretion, and that the defendants did not suffer any wrong or injury by its refusal. The situation of the cause when this motion was made and denied was as follows: The trial judge determined that, in the proper administration of justice, the jury should be put in the charge of constables and kept isolated during the trial, and for that purpose four constables were sworn and assigned to that duty. After this was done, the court of its own motion directed a detective, in the employ of the prosecutor of the pleas, to watch the jury and see that no one had opportunity to communicate with them, but this action was not known to the prosecutor of the pleas. Acting on this instruction the detective intruded on the privacy of the jury and was as active in the care and custody of the jury as the sworn constables. He went to the hotel where the jury was taken, mingled and conversed with them, took his meals at the same table, and could, and did, overhear at least a part of their conversation. When

this came to the knowledge of the defendants a motion for mistrial was made and the trial court suspended the trial and took testimony by which the foregoing facts were disclosed. The detective was called, admitting, substantially, his direction from the court to watch the jury and see that no one had an opportunity to communicate with them by telephone or otherwise. He also admitted his attendance on the jury, his presence in the room where the jury were being kept, his having conversed with its members, and other matters relating to his custody and the care of the jury, but denied talking with them about the case. Each juror was sworn and testified that the detective did not speak to them about the case, but admitted that he was with them and occupied a seat at the same table, and one of the jurors testified that some of the evidence was discussed, but not to a very great extent. The question is whether all this was a proceeding from which the defendants suffered a manifest wrong or injury. We think it was, unless we adopt as a rule of judicial procedure that any stranger, and if one then many, may, under a pretended authority, intrude himself on the privacy of a jury and assume its care and custody without injury to the accused, if it be proved that the intruder had not conversed with the jury about the case. We are not disposed to sanction such a procedure, especially where the intruder is in the employ of the prosecuting officer, for his presence may have exercised a secret influence on the jury, for they must have known that the intruder claimed to be there by the direction of the court, or in some official capacity, otherwise they would have ejected him. The administration of justice should be free from any suspicion of partiality or bias if it is to be respected and the judgments of our courts obeyed, and that condition cannot exist if persons not legally authorized are permitted to mingle with a jury and assume its custody during the course of the trial. "Any attempt to invade that seclusion is illegal." *State* v. *Doty*, 32 *N. J. L.* 403. The court had no right to send its special officer to assist the sworn officers in the performance of their duty, and the evidence does not show that the court intended any such thing, but, without direction, and without authority,

the detective assumed his right to do what he did. The Supreme Court in support of its judgment refers to *State* v. *Lewis,* 83 *Id.* 161, but in that case the court of its own motion overruled a question put by the prosecutor. All that happened was that the court overruled a question, and as its action was favorable to the defendant, he could not have suffered the statutory manifest wrong and injury. So, in *State* v. *Cucuel,* 31 *Id.* 249, all the alleged irregularities happened in the presence and with the consent of an authorized officer of the court, and on a rule to show cause it was held that the irregularities were not a sufficient ground for a new trial, but that is not the case here, for we are dealing with the unauthorized intrusion on the privacy of the jury by one who was connected with the office of the prosecutor of the pleas. We are of opinion that an accused person defending himself against a criminal charge suffers the manifest wrong and injury described in the statute, when a detective attached to the office of the prosecutor of the pleas, without authority of law, assumes, in part, at least, the care and custody of a jury empaneled to determine his guilt or innocence on an indictment prosecuted by the prosecutor of the pleas, and in pursuance of that assumption mingles with the jury, converses and takes his meals with them as freely as a properly appointed officer sworn to perform that duty. Certainly, the state's officer could not do what his superior could not. The defendants have not had that fair and impartial trial which the law affords them. The judgment will be reversed.

*For affirmance*—None.

*For reversal*—PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON, JJ. 11.